Kenada v. Gardner.

3   589
127a 393

SAME TERM.	Before the same Justices.

KENADA vs. GARDNER.

A person entering into the possession of land, under another, either as his tenant or by virtue of an agreement to purchase, cannot dispute the title of such person, nor attorn to a stranger, so as to affect such title, while he continues in possession.

An attornment to a stranger, however, by the tenant, is operative as to himself.

The relation of landlord and tenant does not exist, in any sense, between vendor and vendee.	If the vendor has actually made a conveyance his title is extinguished, and the purchaser holds adversely to him, and may controvert his title.	And the vendee may fortify his title by the purchase of any other which may protect him in the enjoyment of the premises.

Though a deed of premises held adversely to the grantor is void as to the person in possession, it is operative, and passes the title, as between the grantor and grantee, and persons standing in legal privity with them.

EJECTMENT for part of lot 94 in Hector, Tompkins county. Lot 94, except the state's 100 acres, was patented to Peter Osterhout on the 22d of Dec. 1791. Cornelius Osterhout, claiming to be the heir of the patentee, conveyed all the lands to which Peter Osterhout might be entitled, as a soldier, from the state of New-York or the United States, to William Radcliff, on the 14th of July, 1792. William Radcliff conveyed to Jacob Radcliff, April 16, 1798. Jacob Radcliff, on the 26th of May, 1815, mortgaged the premises to Brockholst Livingston, who died testate and appointed Susan F. Ledyard, his daughter, executrix of his will. The mortgage was foreclosed by her, and the premises purchased by Asgill Gibbs, in March, 1831, at $700. In March, 1844, Gibbs conveyed to George Gardner. It appeared that a man by the name of Smith was in possession in 1814, under a contract from Jacob Radcliff, and that Kenada succeeded him in 1816, as his assignee. In 1816, and while Kenada was in possession, Eleanor Talida, otherwise called Eleanor Horton, in the case, and who claimed to be a daughter of Peter Osterhout, quit-claimed the premises to Gardner and one Mulligan. In January, 1823, an ejectment was brought upon demises from Nelly Talida, Eleanor Talida, Elijah Horton, and Nelly his wife, and Gardner and Mulligan, against Kenada. Issue was joined in May, 1823. A cognovit was given by the attorney of Kenada in February, 1824, and a judgment thereon finally perfected in June, 1836. A habere facias was issued, tested 13th of May, 1843, returnable in July, by virtue of which Kenada was dispossessed and Gardner put in possession. Before this, and on the 17th of March, 1830, Eleanor Horton conveyed the premises to Kenada with warranty. On the 2d of January, 1833, she released and discharged the judgment, if perfected, in the suit brought against Kenada in 1823, reciting that she was the only lessor of the plaintiff in that suit having title, and that it was part of the agreement under which she conveyed to Kenada that no fur-

Kenada *v.* Gardner

ther proceedings should be had thereon. The jury found a verdict for the defendant, and the plaintiff moved for a new trial.

*D. B. Stockholm*, for the plaintiff.

*A Gibbs*, for the defendant.

*By the Court*, MOREHOUSE, J. The parties in this suit claim under the same patentee, and the question of estoppel is raised as to both. The principle of estoppel, as between lessor and lessee, is well established. It is of the essence of the contract that the paramount ownership of the lessor shall be acknowledged during the continuance of the lease, and that possession shall be surrendered at its expiration. The lessee cannot set up the title of another, without violating his contract and breaking the faith he pledged on obtaining the possession, to surrender it again. (*Blight* v. *Rochester*, 7 *Wheat.* 535. *Cond. Rep.* 5, 335.)

The relation of landlord and tenant in no sense exists between the vendor and vendee. If the vendor has actually made a conveyance, his title is extinguished and the purchaser holds adversely to the vendor, and may controvert his title. It is also well settled that he may fortify that title by the purchase of any other which may protect him in the enjoyment of the premises. (*Watkins* v. *Holman*, 16 *Peters*, 25, 53, 54. *Osterhout* v. *Shoemaker*, 3 *Hill*, 513, 518.) Applying the doctrine to this case, if Kenada was in possession under a conveyance from Radcliff, he had a perfect right to purchase the interest of Eleanor Horton, and Gardner being in possession under her had the same right to purchase the title of Radcliff. It appears from the evidence in the case that Kenada never had a conveyance from Radcliff. He went in as assignee of Smith, who had a contract with Radcliff for the purchase. The terms and conditions of that agreement were not shown, nor did it appear (whatever it might have been) that any part of the consideration of the purchase was ever paid. It cannot be said that a party acquiring possession under an agreement to purchase

thereby extinguishes the rights of the vendor, and that he has no continuing interest in the maintenance of his title. If a conveyance to the vendee depends upon precedent conditions to be performed by him, and he fails, if there be nothing in the letter of his contract, the spirit of it and the principles of morality require him to restore the possession to the vendor. This is the rule of law also. A vendor binding himself to convey conditionally, if the condition be broken by the vendee, may maintain an ejectment. The authorities to show that a person entering under another, either as his tenant or under an agreement to purchase, cannot dispute the title while he continues in possession, are collected by Mr. Tillinghast in his notes to *Adams on Ejectment*, 217, *n. 4 and 5.* (*See also Sayles* v. *Smith*, 12 *Wend.* 57 ; *Shaw* v. *Spear*, 7 *Id.* 407 ; *Jackson* v. *Miller*, 6 *Id.* 228, 232.)

Kenada maintained faithfully the title of Radcliff until he gave the cognovit in 1824. The intimation of the judge that that was equivalent to an attornment is immaterial. Kenada could not legally attorn to a stranger while he continued in possession under the agreement to purchase. It does not follow that it was inoperative as to himself. By it he abandoned his possession, and admitted upon the record that the plaintiff had the paramount right to the possession for the term of 21 years from the 28th of December, 1822. It is quite clear that Kenada never had any conveyance from Radcliff, and that he satisfied himself as early as 1824, that Eleanor Horton's was the better title. He took a deed from her with warranty in 1830. He was in possession, and it was operative to convey whatever rights she had, seven years before she quit-claimed all her interest in the premises to Gardner and Mulligan. The conveyance to Kenada was procured undoubtedly (for there is no intimation that she had acquired rights to the estate intermediate the conveyances,) under the erroneous impression or belief that the conveyance to Gardner and Mulligan at the time the lands were held by Kenada adversely to her, was entirely inoperative and void, and that the title remained in her. Though the rule may be frequently found as broad as that in

the books, there are well settled qualifications of it.   As between grantor and grantee and persons standing in legal privity with them, the deed is operative and passes the title.   The deed is void as against the party who might otherwise be injured, but good as to all others.   As to him the grantor must sue and the recovery enures to the benefit of the grantee.   Kenada voluntarily abandoned his possession to Mrs. Horton, or to Gardner and Mulligan, or all of them, when he gave the cognovit, and the title of Mrs. Horton vested in her grantees, against all the world.   The term expired, what is the situation of Kenada? Does he claim under Radcliff as the paramount title?   Gardner acquired that by deed in 1844.   Under Mrs. Horton? Gardner has a prior conveyance.   It appears to me, that whichsoever way he turns, defeat stares him in the face.   It is unaccountable, if the affidavit of Mrs. Horton was true, and the Cornelius Osterhout, who conveyed to Radcliff in 1798, was in 1830 living at Openheim in Montgomery county, that no efforts should have been made by Kenada, or the person under whom he claimed, if he had notice of the first ejectment, to show the validity of that title.

It is unnecessary to consider the deposition of Cook, and if, as is already shown, Mrs. Horton had parted with her title before her name was used as a lessor of the plaintiff in the suit against Kenada, it is clear, upon the most common principle of morality, that she had no authority to suspend the proceedings, or release the judgment.   That release is of no validity except to show, as it does by recital, that the giving of the relicta and cognovit was the authorized act of Kenada himself, and upon deliberation.

Judgment for defendant.