## JOHAN JOST BECKER AND OTHERS, RESPONDENTS, *v.* WALTER S. CHURCH, APPELLANT.

*Summary proceedings to recover possession of land — when the validity of a lease may be attacked in such proceedings, by the defendant, for fraud — when an equitable action to cancel the lease will lie.*

This action was brought by the plaintiff to have a paper executed by the parties to this action, which purported to change the relation existing between them from a tenancy from year to year to a tenancy at will, set aside on the ground that it was procured by fraud, and to restrain the defendant from further proceeding, in certain summary proceedings instituted by him, to remove the plaintiff from the possession of the demised premises. Upon the trial it appeared that on or before July 5, 1882, the plaintiff Becker was a tenant of the defendant Church; that on that day the plaintiff was induced by fraud to execute a paper purporting to change such tenancy to a tenancy at will; that in May, 1883, Church, after serving a notice to quit, pursuant to the statute to terminate a tenancy at will, instituted summary proceedings to dispossess Becker, whereupon the latter brought this action and recovered therein a judgment, from which this appeal was taken.

*Held,* that the judgment should be affirmed. (LANDON, J., dissenting.)

*It seems,* that the question as to whether or not the alleged lease was procured by fraud could have been tried in the summary proceedings. (Per BOCKES and LANDON, JJ.; LEARNED, P. J., *contra.*)

APPEAL from a judgment, entered in Albany county, upon the report of a referee granting an injunction restraining the defendant from proceeding, in summary proceedings instituted by him, to remove the plaintiffs from certain premises in the town of Berne, by reason of the alleged expiration of the term of their tenancy, and canceling and setting aside an alleged lease on the ground that it was procured by fraud.

*S. W. Rosendale*, for the appellant.

*W. & G. W. Youmans*, for the respondent.

LEARNED, P. J.:

I assume for the present that on and before July 5, 1882, Becker was tenant from year to year of Church; that on that day a paper was executed between the parties which purported to change such tenancy to a tenancy at will; that such paper was, as the referee finds, obtained from Becker by fraud. Thereupon, in May, 1883, Church served a notice to quit upon Becker, pursuant to the statute to terminate a tenancy at will, and proceeded to take summary proceedings thereunder to dispossess Becker.

Now upon those proceedings, that paper would have been proof against Becker that he was such tenant at will. Could he in those proceedings have shown that that paper was obtained by fraud? Is he, therefore, forbidden to maintain this action, which is brought both to set aside and cancel that paper, and also to restrain the summary proceedings? Now I suppose that an action in equity will be maintained for the purpose of setting aside and canceling an instrument affecting title to land and obtained by fraud. (Pomeroy's Eq., §§ 110, 399; Story's Eq , §§ 694, 700; Potter's Willard's Eq , m. p., 304.)

As part of the remedy, actions or proceedings on the fraudulent instrument will be enjoined. But could the county judge try the question of fraud in the obtaining of the instrument? He has jurisdiction to pass on the legal title only, and not on an equitable title. (*Terrett* v. *Cowenhoven*, 11 Hun, 320; *People ex rel. Ainslee* v. *Howlett*, 13 id., 138.) This latter case was affirmed (76 N. Y., 576), and the decision there, made by only four out of seven judges, goes to the point that the defendant, by alleging facts, showing that the

so-called lease was void for usury, set up a defense that denied the conventional relation of landlord and tenant, and that such an issue should have been tried by a jury.

Now, if we look at the Code (sec. 2244) it will be seen that the person against whom summary proceedings are taken may put in an answer denying generally the allegations, or specifically, any material allegation. He is, therefore, limited to denials. And there is no provision for affirmative allegations. Suppose, then, that the petitioner alleged a tenancy at will, and the respondent denied it. On the trial of that issue could the respondent have been permitted to show that the alleged lease was obtained by fraud, and was, therefore, *voidable*, not *void*, as in a case of usury? I find no case where it has been held that any question, such as here arises, can be tried in summary proceedings.

It seems to me then that if the alleged instrument was obtained by fraud, as it affected Becker's title to land, he might maintain an equitable action for its cancellation, and as a part of the relief therein, might restrain proceeding upon it. Nor do I think that fraud in obtaining an alleged lease is an issue to be tried in summary proceedings.

As my brother BOCKES concurs with me in the former of these two propositions, the judgment is affirmed, with costs.


BOCKES, J.:

I concur with my brother LANDON in his opinion as to all subjects discussed by him thereinafter considered.

The summary proceeding here enjoined had its basis on the writing between the parties of July 5, 1882. The defense interposed in such proceeding by the present plaintiffs, Becker & Engle (their defendants) was, that such written agreement was void for fraud in its procurement.

Before the final order, in favor of the present defendant, the plaintiff in said proceeding, was signed by the officer before whom it was conducted, this action was brought for a double purpose, first, to have the written agreement adjudged fraudulent and void; and, second, to enjoin the further proceeding to remove the present plaintiff as tenant in default thereunder.

The referee, before whom this action was tried, found for the

plaintiffs, that the paper was void for fraud, directed its cancellation; also, that the defendant be enjoined from further action i the proceeding having for its basis such void instrument.

Now, I accept the conclusion reached by the referee and approved by my brother LANDON in his opinion, that the written instrument was void for fraud; and I further concur in the conclusion reached by the learned judge that the invalidity of that instrument, because of fraud in its procurement, was proper matter of investigation in the summary proceeding. I am of the opinion that this point is determined in the *People* v. *Howlett* (76 N. Y., 574). It is there said, in approval of the doctrine laid down in *Roach* v. *Cosine* (9 Wend., 228), that the cases tend in the direction of permitting evidence going behind the formal character of the instruments in order to ascertain the real nature of the transaction, and a remark is added, which, here as there, has especial signification: "It is to be observed, however, that in proving the letting the real facts were developed," etc. Thus, in this case, the proving of the instrument opened up and let in the proof which showed it void for fraud. It may be well to quote further from the case cited, as the reasoning is here applicable: "It is urged that the tenant can only prove what is admissible under a simple denial of the facts, and that usury can never be shown unless pleaded. We think that this construction is too narrow. Usury renders the lease void. It is not a lease, and there can be no tenancy by virtue of a nullity, and a denial of the lease, and the tenancy entitles the party to prove the facts which render it void. He may show that it was obtained by duress under such denial." (P. 580.) These remarks have direct application, as I think, to the subject under consideration. I am, therefore, of the opinion that proof to the effect that the instrument, relied on as a basis for the summary proceeding against the plaintiffs was void for fraud in its procurement, was competent matter of defense in that proceeding. But I am further of the opinion that, although there admissible, hence subject to review on appeal, it does not follow that this action will not lie in its present form and for the purposes for which it was instituted. The ground of action is the alleged fraud in the procurement of the writing, and the relief sought is its cancellation because of such fraud. This end could not be attained in the summary

proceeding. The ground of action is, too, undoubtedly of equity cognizance.

The court had jurisdiction in the case. Now, having jurisdiction as to the gravamen of the action and the relief sought to be obtained, all collateral matters growing out of it, within the scope of the equitable powers of the court, were matters to be redressed if justice so demanded. If need be, the Court of Equity will extend the remedy in the particular case so as to make relief complete. So, if an instrument be adjudged void, it may and should enjoin all future action based upon it.

Holding to this view of the case, I think the judgment should be affirmed, with costs.

LANDON, J. (dissenting):

This is an appeal from a judgment entered upon the report of a referee, granting an injunction restraining the defendant from proceeding further in certain summary proceedings instituted by him to remove the defendants from certain premises in the town of Berne, by reason of the expiration of the term of tenancy. Four acres of the premises are the same which we have considered in the case of *Church* v. *Schoonmaker*, and were held by plaintiff subject to the rents reserved in the Post lease of 1795. The other portion consists of one acre adjoining the Post parcel. This acre had originally belonged to Stephen Van Rensselaer; had been leased by him to one Kast, and in 1842 was by deed conveyed by Kast to Van Rensselaer. At that date Paul Settle was occupying the Post four acres as tenant of Van Rensselaer, and it seems he went into possession of the Kast parcel as tenant, but without any written lease. The Post parcel was upon one side of a creek, and the Kast parcel on the other side directly opposite. The Post parcel had been known and used as a mill lot, and when Paul Settle went into the occupation of the Kast parcel he built a new mill upon the Kast parcel, and the old mill went to decay or was torn down. Thereafter both parcels were used in part as a mill lot.

The term of sixteen years mentioned in the Post lease of 1795 expired in 1811, but thereafter, without any written renewal of the lease, the Post parcel was occupied under the same terms, as to rent, until some time before 1842, when the rent was raised to sixty

dollars. After Paul Settle went into possession of both parcels he paid rent at the rate of sixty dollars per year without any specification of the amount charged upon either parcel. In 1851, Paul Settle conveyed his interest in both parcels to Edward Settle, who continued to occupy and pay the same rent. He paid rent in full ·'on said lands," as the referee finds, up to January 1, 1860. The referee finds that it does not affirmatively appear from whom Settle derived title to the Kast parcel, or by what tenure he held it.

It is apparent, however, from the facts found by the referee, that both Paul and Edward Settle held the Kast parcel under Van Rensselaer and as his tenant, and, further, that the rent of both the Kast and Post parcels was sixty dollars per year. On the 27th of March, 1860, Edward Settle conveyed both parcels to the plaintiff by quit-claim deed, both parcels being separately described, the Post parcel being subject to the rents in the Post lease, but no mention of tenancy being made with respect to the Kast parcel.

The referee finds that on the 5th day of July, 1882, the plaintiff did not know the amount of rents reserved in the Post lease, and did not know that any rents were reserved upon the Kast parcel. The rent, on the 5th day of July, 1882, had remained unpaid from January 1, 1860. Church became the grantee of the Van Rensselaer title February 21, 1882. In May following Church agreed to take, and the plaintiff agreed to give, $1,200 "for all arrears of rent." The plaintiff paid Church $1,008.75 upon this agreement July 5, 1882.

Upon these facts no question of adverse title or of champerty can arise. Becker, by paying $1,008.75, upon "all arears of rent," attorned to Church and admitted that he had held under the Van Rensselaers and now held under him. The plaintiff's quit-claim deed was not inconsistent with the tenancy, and when rent was demanded of him he agreed to pay it and did.

The referee does not find that the $1,008.75 was paid under a mistaken impression that it referred only to the Post parcel. The plaintiff testifies that when the $1,200 was agreed upon "there was something said, concerning that should be all the claim against the whole place." The plaintiff also told Church "that he would pay his rent thereafter, there would be no more trouble." Since he was to pay rent thereafter, it probably did not occur to him

that it made any difference whether he paid the sixty dollars per year upon both parcels or upon one of them.

We ought not, in support of the judgment, to presume that the referee found a fact which the evidence will not justify. The referee has rejected, as fraudulently procured, the paper executed by the plaintiff at the time he paid the $1,008.75. This paper purported to change the tenancy from year to year to a tenancy at will. We see no reason to differ from the referee in his finding of fact in this respect.

The effect of it is to leave the tenancy from year to year existing in the same manner as if no paper had been executed. But such tenancy was not terminated by the service of the notice in May, 1883, requiring the plaintiff to quit the premises one month thereafter. Hence the summary proceedings could not be sustained. We have discussed the case on the merits, because the case of *Becker* v. *Church*, herewith argued, requires it.

But this was an objection which could have been taken in the proceedings themselves. The invalidity of the paper purporting to change the nature of the tenancy could have there been litigated. (*The People* v. *Howlett*, 76 N. Y., 574.)

The court will not, by injunction, restrain summary proceedings unless the tenant has some equity or defense of which the county judge has no jurisdiction. (*Knox* v. *McDonald*, 25 Hun, 268; *Jessurun* v. *Mackie*, 24 id., 624; S. C., 86 N. Y., 622; *Broadwell* v. *Holcombe*, 4 Civ. Pro. Rep., 159.) Here, all the facts insisted upon by plaintiff would have been competent as evidence in support of the issue before the county judge, and if error had been committed, the remedy was by appeal.

The judgment should be reversed, new trial granted, reference discharged, costs to abide event.

Judgment affirmed, with costs.